[No. 78575-9.  En Banc.]
Argued June 13, 2006.     Decided May 3, 2007.

THE CITY OF MEDINA, *Respondent*, v. MELODY F. PRIMM, *Petitioner*.

THE TOWN OF YARROW POINT, *Respondent*, v. BRIAN AHRENS, *Petitioner*.

THE CITY OF CLYDE HILL, *Respondent*, v. KAHA GAPRINDASHVILI, *Petitioner*.

*John R. Rongerude*, for petitioners.

*Lynn E. Moberly*; *Michael R. Kenyon* (of *Kenyon Disend PLLC*); and *Lacey L. Madche*, for respondents.

*Daniel B. Heid* on behalf of Washington State Association of Municipal Attorneys, amicus curiae.

¶1  MADSEN, J. — The cities of Medina and Clyde Hill, and the town of Yarrow Point (Cities) are among at least 18 cities and towns that operate their municipal courts in a neighboring city pursuant to an interlocal agreement.[1] Between 2000 and 2005, the Cities in these consolidated cases processed 11,814 cases through court facilities provided by the city of Kirkland.[2] Melody Primm, Brian Ahrens, and Kaha Gaprindashvili (Petitioners) are among those who were prosecuted and convicted in the Kirkland Municipal Court for violations of the municipal codes of their respective municipalities. Petitioners challenged their convictions in King County Superior Court, claiming that Kirkland Municipal Court lacked subject matter jurisdiction over violations of the municipal codes of Medina, Clyde Hill, and Yarrow Point. The court rejected Petitioners' argument, ruling that the courts of each of the Cities have jurisdiction over the violations of their respective municipal codes. Further, based on interlocal agreements entered into by the Cities to share municipal court facilities with the Kirkland Municipal Court, each court had the authority to hear these cases outside the geographical boundaries of their respective city or town. Because the legislature authorized such court-sharing arrangements, we affirm the superior court.

## FACTS

¶2  The Cities in this case each created municipal courts under RCW 3.50.010, formed interlocal agreements under RCW 39.34.180 with the city of Kirkland to operate their respective municipal courts, and appointed the judge of the Kirkland Municipal Court to serve as judge of each of the courts. The Petitioners were prosecuted by their respective

---

[1] Other cities include: Algona (Auburn); Ridgefield, La Center (Battle Ground); Pateros (Brewster); Carbonado (Buckley); Maple Valley (Enumclaw); Hunt's Point (Kirkland); Lake Stevens, Arlington (Marysville); Newcastle (Mercer Island); Vader (Napavine); Everson (Nooksack); Mabton (Sunnyside); Rainier (Tenino); South Prairie (Wilkeson).

[2] *See* Administrative Office of the Courts, *Annual Courts of Limited Jurisdiction Caseload Reports*, http://www.courts.wa.gov/caseload (last visited Apr. 27, 2007).

city or town in their respective municipal courts, located at the Kirkland Municipal Court. Specifically, Medina charged Melody Primm under RCW 46.61.502 with one count of driving under the influence of alcohol or drugs. She appeared pro se in the Medina Municipal Court located at the Kirkland Municipal Court and pleaded guilty to an amended charge of reckless driving. Prior to sentencing, Primm obtained counsel and filed a motion to dismiss for lack of subject matter jurisdiction. The court denied the motion as untimely. Primm then filed an appeal in King County Superior Court under Rules for Appeal of Decisions of Courts of Limited Jurisdiction (RALJ).

¶3 The town of Yarrow Point charged Brian Ahrens with driving under the influence of alcohol or drugs under the Yarrow Point Municipal Code. Ahrens appeared in the Kirkland Municipal Court and was granted a deferred prosecution by the Yarrow Point Municipal Court, which was later revoked. At the revocation hearing, Ahrens moved to dismiss the charge for lack of subject matter jurisdiction.

¶4 Clyde Hill charged Kaha Gaprindashvili with a misdemeanor under its city code. Gaprindashvili joined Ahren's motion to dismiss. In both cases, the municipal court ruled that it lacked jurisdiction to decide the validity of the interlocal agreements between the Cities and Kirkland providing court services to the Cities and stayed the matter pending a RALJ appeal by the Cities. By agreement of the parties, the cases were consolidated for the appeal.

¶5 Following oral argument, the King County Superior Court ruled that the Medina, Yarrow Point, and Clyde Hill municipal courts "have subject matter jurisdiction to hear cases involving violations of their respective city ordinances in a courthouse building located outside of their respective city limits." Clerk's Papers at 58 (Order on RALJ Appeals). Petitioners then moved for discretionary review of these consolidated cases in the Court of Appeals. Pursuant to RAP 4.4, the cases were transferred to this court. The Washington State Association of Municipal Attorneys filed an amicus brief.

## ANALYSIS

¶6 Petitioners claim that the issue in this case is whether Kirkland Municipal Court has subject matter jurisdiction to adjudicate alleged violations of the Medina, Yarrow Point and Clyde Hill municipal codes. They claim that a municipal court has jurisdiction only over violations of the municipal code of the municipality in which it is located. Accordingly, Petitioners argue that Kirkland Municipal Court lacks jurisdiction to hear cases arising under the municipal codes of any other city or town.

¶7 Initially, we note that the Petitioners mischaracterize the role being played by Kirkland Municipal Court. The Kirkland Municipal Court is *not* enforcing the Medina, Clyde Hill, or Yarrow Point municipal codes; rather, the Medina, Clyde Hill, and Yarrow Point municipal courts, sitting in Kirkland, are enforcing their respective municipal codes. This distinction is not merely semantic: the municipal judge was appointed by the duly elected mayors of Medina, Clyde Hill, and Yarrow Point, each of whom may be held accountable for the selection by the voters of their respective cities. The issue is not whether Kirkland Municipal Court has subject matter jurisdiction to hear violations arising under the municipal codes of the Cities, but whether the municipal courts of the Cities have jurisdiction to hear cases in the court facilities of a different city, in this case the Kirkland Municipal Court.

¶8 A court's subject matter jurisdiction is a question of law, which is reviewed de novo. *Dougherty v. Dep't of Labor & Indus.*, 150 Wn.2d 310, 314, 76 P.3d 1183 (2003). A municipal court is a court of limited jurisdiction, which may exercise only the jurisdiction affirmatively granted by the legislature. *Smith v. Whatcom County Dist. Court*, 147 Wn.2d 98, 104, 52 P.3d 485 (2002). The legislature has the sole authority to define the jurisdiction of such courts.

CONST. art. IV, § 12;[3] *Young v. Konz*, 91 Wn.2d 532, 540-41, 588 P.2d 1360 (1979).

¶9 This case requires us to consider several statutes, including the court improvement act of 1984 (chapter 3.50 RCW), the Interlocal Cooperation Act (chapter 39.34 RCW), and statutory provisions governing the termination of municipal courts and the collection of court filing fees.

¶10 When reviewing statutory provisions, our responsibility is to give effect to the legislature's intent. We give effect to the plain meaning of a statute as an expression of legislative intent. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 11, 43 P.3d 4 (2002). To discern plain meaning, we examine a statute together with related statutes and other provisions within the same act. *Id.*

¶11 In order to determine whether the Cities have authority to share municipal court facilities and thus, whether the municipal courts have jurisdiction to hear cases outside the geographic boundaries of their respective cities, we must go back in time. In the early 1980s, a number of cities repealed their municipal criminal codes and/or dissolved their municipal courts due to the escalating administrative and financial burden of prosecuting code violations. As a result, counties were faced with the unexpected obligation to assume these costs. *See City of Spokane v. Spokane County*, 158 Wn.2d 661, 674-75, 146 P.3d 893 (2006) (discussing legislative history of the court improvement act, requiring cities to compensate counties for the financial impact of repealing municipal codes and terminating municipal courts). The legislature addressed the problem in the court improvement act of 1984. LAWS OF 1984, ch.

---

[3] The legislature has plenary authority to prescribe the jurisdiction and powers of courts of limited jurisdiction, including municipal courts. *See* CONST. art. IV, § 1 ("The judicial power of the state shall be vested in a supreme court, superior courts, justices of the peace, and such inferior courts as the legislature may provide."); CONST. art. IV, § 12 ("The legislature shall prescribe by law the jurisdiction and powers of any of the inferior courts which may be established in pursuance of this Constitution."); *In re Habeas Corpus of Eng*, 113 Wn.2d 178, 184-85, 776 P.2d 1336 (1989) (municipal courts created under chapter 3.50 RCW are "inferior courts" within the meaning of article IV, sections 1 and 12).

258. That legislation relieved the financial burden on counties by making cities financially responsible for the costs arising from the repeal of municipal criminal codes and the termination of municipal courts. At the same time, the legislature reorganized the municipal courts to allow them "to operate in a more effective and efficient manner." RCW 3.50.005.

¶12 Under the legislation, a city with a population of less than 400,000 may elect to either file cases in district court pursuant to RCW 3.66.060, petition for the establishment of a municipal department in the district court pursuant to chapter 3.46 RCW, or create by ordinance a municipal court pursuant to chapter 3.50 RCW. Such municipal courts created under the latter option have exclusive original jurisdiction over traffic infractions and violations of the city's ordinances. RCW 3.50.020. The legislature further provided that "[t]he municipal court shall also have the jurisdiction as conferred by statute." *Id.*

¶13 At the same time the legislature authorized the creation of municipal courts under chapter 3.50 RCW, it enacted a statute governing their termination. RCW 3.50.805(1) provides that

[a] municipality operating a municipal court under this chapter shall not terminate that court unless the municipality *has reached an agreement with the appropriate county or another municipality under chapter 39.34 RCW [Interlocal Cooperation Act]* under which the county *or municipality* is to be paid a reasonable amount for costs associated with prosecution, adjudication, and sentencing in criminal cases filed in district *or municipal court* as a result of the termination . . . . *A municipality that has entered into agreements with other municipalities* that have terminated their municipal courts may not thereafter terminate its court unless each municipality has reached an agreement with the appropriate county.

(Emphasis added.)

¶14 The Interlocal Cooperation Act referenced in RCW 3.50.805(1) above provides:

Any one or more public agencies[4] may contract with any one or more other public agencies *to perform any governmental service,* activity, or undertaking which each public agency entering into the contract is authorized by law to perform: PROVIDED, That such contract shall be authorized by the governing body of each party to the contract.

RCW 39.34.080 (emphasis added). The authority granted by the broad, unqualified language of the Interlocal Cooperation Act is "in addition and *supplemental to* powers or authority conferred by *any other law.*" RCW 39.34.100 (emphasis added).

¶15 The purpose of the Interlocal Cooperation Act is

*to permit local governmental units* to make the most efficient use of their powers by enabling them *to cooperate with other localities* on a basis of mutual advantage and thereby *to provide services and facilities* in a manner and pursuant to forms of governmental organization that will accord best with geographic, economic, population and other factors.

RCW 39.34.010 (emphasis added).

■ ¶16 Read together, RCW 3.50.020, 3.50.805(1), and the Interlocal Cooperation Act (RCW 39.34.080) plainly provide cities with the power to *enter and dissolve* intercity court-sharing agreements.

¶17 RCW 3.62.070 provides further support for the conclusion that the legislature contemplated that cities could contract with one another to jointly perform municipal court functions. It provides that a district court may charge a fee for every case filed by a city for violation of a criminal or traffic infraction *"except in cases where a city has contracted with another city for such services pursuant to chapter 39.34 RCW."* RCW 3.62.070 (emphasis added).

¶18 By incorporating the Interlocal Cooperation Act into the plain language of RCW 3.50.805(1) and RCW 3.62.-.070, the legislature expressly authorized cities to enter

---

[4] A municipal corporation is a "public agency" within the meaning of the Interlocal Cooperation Act. RCW 39.34.020(1).

interlocal agreements with one another for municipal court services. The statutory requirement that a city must enter an interlocal agreement to compensate the county *or another city* for costs "associated with prosecution, adjudication, and sentencing in criminal cases" before terminating a municipal court would be a nullity unless the Interlocal Cooperation Act provided the supplemental jurisdictional authority referenced in RCW 3.50.020. RCW 3.50.805(1). Rather, the legislature plainly contemplated that cities could routinely enter such contracts.

¶19 The Petitioners contend, though, that the Interlocal Cooperation Act does not apply here because the Kirkland Municipal Court is not authorized to enforce any municipal code other than its own. But the question under RCW 39.34.080 is whether the city is authorized to perform the *type* of governmental activity that is the subject of the agreement; here, the creation and operation of a municipal court pursuant to chapter 3.50 RCW. To read the Interlocal Cooperation Act as the Petitioners do renders it meaningless because a city generally is not authorized to perform *any* governmental activities (court services or otherwise) other than those relating to its own territory and population. *See State v. Stannard*, 109 Wn.2d 29, 36, 742 P.2d 1244 (1987) (statutes are construed to give effect to legislative purpose and unlikely, absurd, or strained consequences should be avoided).

¶20 The legislature intended to authorize the extraterritorial operation of municipal courts pursuant to such court-sharing arrangements as those presented here. RCW 39.34.080 authorizes cities to perform "*any* governmental service" on behalf of other cities. (Emphasis added.) By incorporating chapter 39.34 RCW into provisions governing the termination of municipal courts and the collection of filing fees, the legislature indicated that the operation of a municipal court is a "governmental service" within the meaning of RCW 39.34.080.

¶21 This is entirely consistent with the purposes of the court improvement act of 1984. The legislature sought not

only to protect counties by requiring cities to compensate them for the financial consequences of terminating a municipal court or repealing a municipal code, but also to make it easier for cities to operate their own municipal courts in a more "effective and efficient manner." RCW 3.50.005. Court-sharing arrangements similarly further the purposes of the Interlocal Cooperation Act by allowing cities "to cooperate with other localities . . . to provide services and facilities" in a "more efficient manner." RCW 39.34.010.

¶22 Petitioners point out, though, that the Cities' reliance on RCW 39.34.180 as authority for intercity contracting is flawed and that the provision governs only interlocal agreements between cities and counties, not between cities.

¶23 RCW 39.34.180 addresses a particular conflict between cities and counties over criminal justice costs. Following passage of the court improvement act of 1984, the cities and counties continued to disagree about the equitable apportionment of costs arising from the prosecution of misdemeanor and gross misdemeanor offenses. FINAL B. REP. on Engrossed Substitute S.B. 6211, at 1, 52d Leg., Reg. Sess. (Wash. 1996). Some cities avoided the financial burden of such costs altogether by refusing to adopt criminal codes, while others partially repealed their criminal codes, shifting the financial burden of prosecuting particular classes of offenses to the counties.[5] See Whatcom County v. City of Bellingham, 128 Wn.2d 537, 909 P.2d 1303 (1996) (detailing Bellingham's partial repeal of its criminal code to shift the financial burden of prosecuting jailable offenses to the counties).

¶24 In 1996, the legislature enacted RCW 39.34.180, expressly allocating to the cities the financial responsibility

---

[5] For instance, in a letter to the house committee considering Senate Bill 6211 (later enacted as RCW 39.34.180), King County Prosecutor Norm Maleng stated that the city of Federal Way repealed its criminal code relating to domestic violence cases and the city of Seattle repealed ordinances criminalizing the possession of marijuana, "leaving local police with no option other than referral of the case to the county prosecutor for filing under the state statute." Letter to Honorable Bill Reams, Chair, House Committee on Government Operations (Feb. 13, 1996) (attach. to Final B. Rep., Engrossed Substitute S.B. 6211).

for the prosecution of all criminal misdemeanor and gross misdemeanor offenses occurring within the city limits. RCW 39.34.180(1). Subsections of RCW 39.34.180 set forth the specific subject matters that must be addressed in the interlocal contract between counties and cities, RCW 39.34.180(2), require arbitration in the event of disputes, RCW 39.34.180(3), require one year notice of termination, RCW 39.34.180(4), and grant a two year grace period for cities that never before bore the costs of criminal prosecutions, RCW 39.34.180(5).

¶25 Both the plain language and the legislative history of RCW 39.34.180 indicate that it governs city/county interlocal agreements. Thus, we agree with Petitioners that RCW 39.34.180 was not intended to govern intercity court-sharing agreements. However, the authority of cities and towns to contract with one another for court-sharing arrangements preexisted the enactment of RCW 39.34.180, as apparent in RCW 3.50.805 (governing termination of municipal court services performed by one municipality on behalf of another) and RCW 3.62.070 (regulating the fees cities must pay to district court for enforcement of city ordinances except "where a city has contracted with another city for such services pursuant to chapter 39.34 RCW"). RCW 39.34.180 clarifies the allocation of criminal justice costs as between cities and counties and imposes specific requirements for city/county interlocal agreements. But the authority of cities to enter into such agreements with one another arises under RCW 39.34.080, and there is no indication that the legislature intended to repeal that authority when it enacted RCW 39.34.180.

¶26 Petitioners also point to the legislature's failure to act on a bill that would have amended RCW 3.50.020 by adding the language, "Any municipality may operate a municipal court under this chapter with one or more other municipalities, pursuant to an interlocal agreement under chapter 39.34 RCW. Municipal courts operating under any such interlocal agreements shall have exclusive original criminal and other jurisdiction as set forth in this section."

S.B. 5500, 58th Leg., Reg. Sess., at 1 (Wash. 2003). This amendment, Petitioners contend, would have permitted exactly the kind of interlocal agreements that the Cities in this case assert already exist. Failure to pass this amendment, Petitioners claim, indicates that the legislature did not intend to authorize intercity court-sharing arrangements.

¶27 We decline to speculate on the reasons for the legislature's failure to adopt the amendment to RCW 3.50.020. In the absence of a court decision holding that chapter 39.34 RCW does *not* confer the supplemental statutory authority referenced in RCW 3.50.020, nothing can be inferred from the legislature's inaction on the proposed bill. *See State v. Conte*, 159 Wn.2d 797, 813, 154 P.3d 194 (2007) ("legislative intent cannot be gleaned from the failure to enact a measure"); *Spokane County Health Dist. v. Brockett*, 120 Wn.2d 140, 153, 839 P.2d 324 (1992) (a reviewing court will not speculate on the legislature's reasons for rejecting a proposed amendment); *compare State v. Edwards*, 84 Wn. App. 5, 12-13, 924 P.2d 397 (1996) (legislature's failure to amend the law in response to a court's interpretation implies agreement with that interpretation).

¶28 Petitioners next cite to a memorandum opinion prepared by Washington State Supreme Court Commissioner Geoff Crooks regarding the authority of Seattle Municipal Court to hear cases outside its city limits. Initially, the memorandum opinion was prepared in response to a specific judge's inquiry and has no precedential weight. Further, the issue to which the commissioner was responding was significantly different than the one presented here. There, a Seattle Municipal Court judge requested an opinion regarding the authority of that court to hold sessions of court outside the city limits of Seattle in addition to conducting court sessions within its own courthouse. Relying on cases from foreign jurisdictions, the commissioner concluded Seattle Municipal Court could not act outside its territorial limits without statutory authority. The commissioner's conclusion is consistent with our view. As explained

above, the legislature has provided statutory authority permitting the Cities to enter intercity agreements for the provision of court services outside the geographical limits of the contracting Cities.

¶29 Finally, Ms. Primm contends that Medina Municipal Court lacks jurisdiction over violations of the Revised Code of Washington. She points to language in RCW 3.46.030 and RCW 3.50.010 conferring on municipal courts "exclusive jurisdiction of matters arising from ordinances of the city" and "no jurisdiction of other matters." Ms. Primm fails to recognize, however, that the city of Medina has adopted by reference the state law with which she was charged. Chapter 10.14 of the Medina City Code, entitled "Driving While Under Influence of Intoxicating Liquor or Drug," contains the following subsection:

**10.14.010 Washington state law adopted.**

Chapter 275, Sections 1, 2, 3, 4, 5, 7, 9, 21, 22, 23, 24, 26, 32 and 40, Laws of 1994, are hereby adopted by reference as and for a portion of the Medina Traffic Code.

¶30 Driving under the influence, codified in RCW 46.61.502, is among the laws adopted by reference in Medina City Code 10.14.010. Thus, Medina Municipal Court had jurisdiction to adjudicate the misdemeanor charge against Ms. Primm based on an alleged violation of RCW 46.61.502.

¶31 To the extent Ms. Primm challenges the adequacy of the charging document, her claim fails. Ms. Primm raised the issue for the first time on appeal. Under the rule of liberal construction applicable to such challenges, we will uphold the validity of a charging document if (1) all the essential elements of the offense may be fairly found therein and (2) the defendant has failed to establish prejudice from any inartful language. *State v. Kjorsvik*, 117 Wn.2d 93, 103, 812 P.2d 86 (1991). Ms. Primm does not assert that the charging document failed to apprise her of the essential elements of the offense, and thus she cannot show prejudice.

## CONCLUSION

¶32 We are not called upon to decide whether intercity municipal court-sharing agreements are good public policy, but whether the legislature authorized such agreements pursuant to its sole constitutional authority over courts of limited jurisdiction. Under RCW 3.50.020, a municipal court has jurisdiction over traffic infractions and violations of a city's code, plus those powers "conferred by statute." Under RCW 39.34.080, cities may contract with one another "to perform any governmental service," without exception for municipal court services. These statutes authorize the extraterritorial operation of municipal courts pursuant to court-sharing agreements between cities, as apparent in RCW 3.50.805 (governing termination of municipal court services performed by one municipality on behalf of another) and RCW 3.62.070 (regulating the fees cities must pay to district courts for enforcement of city ordinances except "where a city has contracted with another city for such services pursuant to chapter 39.34 RCW"). Accordingly, we affirm the superior court.

C. JOHNSON, CHAMBERS, and FAIRHURST, JJ., concur.

■■■ ¶33 ALEXANDER, C.J. (concurring) — I write separately to indicate that although I fully concur with Justice Madsen's conclusion that it is lawful for two or more cities to agree that one of the cities will provide municipal court services for another city, I encourage the legislature to consider eliminating legislative authorization for this practice. While I am generally loath to set forth my own views on what may appear to be entirely a matter of public policy, I do so because the issue we are talking about relates to the administration of justice. This is a subject upon which judges and justices have historically made their views known to the legislature.

¶34 The principal reason I think that it is unwise for one city to provide municipal court services for another city or cities is that this practice has the capacity to cause consid-

erable inconvenience to the public. While I recognize that the cities of Clyde Hill, Medina, and the town of Yarrow Point are in close proximity to the city of Kirkland, there appears to be no legal impediment to cities that are separated by greater distances from entering into an agreement similar to those with which we are here confronted. If this were to occur, many, if not most, persons wishing to appear before the court in response to a charge that they violated a municipal ordinance of the charging city would be seriously inconvenienced in having to travel that great distance to conduct a defense against the charge. Indeed, the inconvenience might be so great as to inhibit a party from defending against the charge entirely.

¶35 While the practice that allows a city to contract with another city for municipal court services may be viewed by some as a legitimate cost savings or efficiency measure, it does not, in my view, serve the public well and, in effect, taxes a portion of the public in order to achieve any cost savings. More importantly, it has the capacity to impede the quest for justice and, thereby, reduces the public's respect for its justice system.

BRIDGE, J., concurs with ALEXANDER, C.J.

¶36 SANDERS, J. (dissenting) — The majority holds the city of Kirkland's municipal court has jurisdiction over violations of the cities of Medina, Clyde Hill, or the town of Yarrow Point's municipal codes. But jurisdiction is territorial. *In re Crawford*, 148 Wash. 265, 267, 268 P. 871 (1928). A municipal court is a court of limited jurisdiction, possessing only the jurisdiction affirmatively granted by statute. *Smith v. Whatcom County Dist. Court*, 147 Wn.2d 98, 104, 52 P.3d 485 (2002). And no statute grants Kirkland, or any other municipality, subject matter jurisdiction over alleged violations of another municipality's codes. Furthermore, the Washington Constitution prohibits Medina, Clyde Hill, and Yarrow Point from operating a municipal court outside their respective boundaries. WASH. CONST. art. XI, § 11.

¶37 "The legislature shall prescribe by law the jurisdiction and powers of any of the inferior courts which may be established in pursuance of this Constitution." WASH. CONST. art. IV, § 12; *see also Smith*, 147 Wn.2d at 104 (stating a municipal court possesses only the jurisdiction "affirmatively granted by statute"). As the majority correctly observes, the legislature has prescribed only three options for a city with a population of less than 400,000 to enforce its municipal code: (1) under RCW 3.66.060, the city may elect to file cases in the district court of the county where the city is located; (2) under chapter 3.46 RCW, the city may petition to establish a municipal department in the district court of the county where the city is located; or (3) under chapter 3.50 RCW, the city may pass an ordinance to create a municipal court within its territorial boundary.[6] What the majority fails to conclude, however, is none of these limited options allows a city to preside over cases involving another city's municipal code nor allows a city to enforce its municipal code through a court sitting in another jurisdiction. And without an express grant of jurisdiction no such power exists.

¶38 The legislature considered amending RCW 3.50.020 to allow a municipality to

> operate a municipal court formed under this chapter with one or more other municipalities that have formed municipal courts consistent with this chapter if such courts are located in whole or in part within the same county, pursuant to an interlocal agreement under chapter 39.34 RCW. Municipal courts operating under any such interlocal agreements shall have exclusive original criminal and other jurisdiction as set forth in this section.

SUBSTITUTE S.B. 5500, 58th Leg., Reg. Sess., at 2 (Wash. 2003). This language would have been the clear and affir-

---

[6] Of course, if no court of limited jurisdiction with exclusive original jurisdiction exists, a municipality may also enforce its municipal code in a court of general jurisdiction. *See* WASH. CONST. art. IV, § 6 ("The superior court shall also have original jurisdiction in all cases and of all proceedings in which jurisdiction shall not have been by law vested exclusively in some other court."); *see City of Seattle v. McCready*, 123 Wn.2d 260, 276-77, 868 P.2d 134 (1994).

mative grant of jurisdiction necessary to allow a municipal court to adjudicate another municipality's claims. *See McCall v. Carr*, 125 Wash. 629, 631, 216 P. 871 (1923) (stating a "right to the exercise of jurisdiction must clearly appear" in a statute). But that amendment failed, and no other law grants Kirkland the jurisdiction necessary to hear cases concerning another city's municipal code. Instead, both RCW 3.46.030 and RCW 3.50.010 give municipal courts "exclusive jurisdiction of matters arising from ordinances of the city" and "no jurisdiction of other matters," except those *expressly* granted by statute.

¶39 The majority claims RCW 39.34.080 expressly grants extraterritorial jurisdiction to a municipal court. Majority at 282. Specifically, RCW 39.34.080 provides, in part: "Any one or more public agencies may contract with any one or more other public agencies to perform any governmental service, activity, or undertaking which each public agency entering into the contract is authorized by law to perform." But allowing municipalities to enter into interlocal agreements for government services neither explicitly nor clearly grants a municipality jurisdiction to either establish a municipal court outside the city's boundaries or empower one to hear cases from another municipality. As the attorney general's office has noted, "governmental services" pertains to activities between a county and city to manage solid waste, 1979 Op. Att'y Gen. No. 2, or maintaining roads located on federally owned property within the county, 1996 Op. Att'y Gen. No. 17. The only section of chapter 39.34 RCW that pertains to "court services" is RCW 39.34.180, which the majority admits "was not intended to govern intercity court-sharing agreements." Majority at 279.

¶40 Without statutory authorization, a contract or agreement cannot grant the jurisdiction Kirkland needs to hear another city's cases. A municipality may contract only for court services by interlocal agreement with the district court of the county it occupies because the district court already possesses the requisite jurisdiction. *See* RCW

39.34.180; RCW 3.66.060. But it cannot contract for court services with the municipal court of another municipality, which does not.

¶41 And just as no statute grants Kirkland authority to hear another municipality's case, no statute grants Medina, Clyde Hill, or Yarrow Point authority to create or operate an extraterritorial municipal court. "Any county, city, town or township may make and enforce *within its limits* all such local police, sanitary and other regulations as are not in conflict with general laws." WASH. CONST. art. XI, § 11 (emphasis added). But a municipality's inherent police powers stop at its borders. *Brown v. City of Cle Elum*, 145 Wash. 588, 589-90, 261 P. 112 (1927); *and see* Mike Finney, *A Study of the Local Government Article: Article XI, Washington State Constitution* 10, *in* CONSTITUTIONAL REVISION IN WASHINGTON: LEGAL ASPECTS (Ralph W. Johnson ed. 1970) ("Express delegation of power is necessary, however, to enable a municipal corporation to exercise police powers outside its territory.").

¶42 Medina, Clyde Hill, and Yarrow Point purport to operate their own municipal courts in Kirkland. But RCW 3.50.080 requires a municipality to operate its own municipal court:

> All costs of operating the municipal court, including but not limited to salaries of judges and court employees, dockets, books of records, forms, furnishings, and supplies, shall be paid wholly out of the funds of the city or town. The city shall provide a suitable place for holding court and pay all expenses of maintaining it.

A municipality cannot "create" a municipal court by fiat—appointing a judge and contracting by interlocal agreement with another municipality for court services. Medina, Clyde Hill, and Yarrow Point lack authority—statutory or constitutional—to create and operate municipal courts in Kirkland.

¶43 If Medina, Clyde Hill, and Yarrow Point wish to enforce their respective municipal codes in a court of

limited jurisdiction, they must operate their own municipal court under chapter 3.50 RCW, establish a municipal department of a district court under chapter 3.46 RCW, or enforce its municipal code district court under RCW 3.66.060. But the Kirkland Municipal Court lacks subject matter jurisdiction to hear cases adjudicating Medina's, Clyde Hill's, or Yarrow Point's municipal codes, and those cities cannot create nor operate municipal courts in Kirkland.

¶44 I dissent.

OWENS and J.M. JOHNSON, JJ., concur with SANDERS, J.