269 P.3d 1056 (2012)
166 Wn. App. 145
Bert HOOK, a single man, Appellant,
v.
LINCOLN COUNTY NOXIOUS WEED CONTROL BOARD, a Washington subagency; Lincoln County, a Washington municipal corporation, Respondents.
No. 29608-3-III.
Court of Appeals of Washington, Division 3.
January 26, 2012.
*1058 David P. Boswell, Boswell Law Firm PS, Spokane, WA, for Appellant.
Lee Russell McGuire Jr., Carpenter, McGuire & DeWulf, Jeffrey S. Barkdull, Lincoln County Prosecuting Attorney, Davenport, WA, for Respondents.
SIDDOWAY, J.
¶ 1 Bert Hook, whose property was subjected to a lien for the cost of weed eradication by the Lincoln County Noxious Weed Control Board, appeals the summary dismissal of his complaint challenging the establishment of the weed control board and its authority to act. He also appeals the trial court's denial of his request to amend his complaint. Finding no error or abuse of discretion, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND
¶ 2 In 1969, the legislature enacted chapter 17.10 RCW to protect Washington's agricultural and other resources from the economic loss and adverse effects caused by noxious weeds: plants that, when established, are highly destructive, competitive, or difficult to control. RCW 17.10.007, .010. The legislation, as enacted and later amended, creates a comprehensive scheme for regulating weed eradication, granting authority to county weed control boards, or alternatively the director of agriculture, to conduct searches of private property, issue citations and infractions, directly control the spread of noxious weeds, place liens on property, and otherwise exercise the power and authority created by the legislation. RCW 17.10.074(1)(g), .160-.180,.230, .280-.350.
¶ 3 The legislation created a county noxious weed control board in every county of the state, but at the same time provided that they were "inactive until activated." RCW 17.10.020. Several events could trigger activation of a county weed control board: the county legislative authority could find a need for activation following a hearing on its own motion or after petitioning by local voters, the state noxious weed control board could order activation in response to a petition by local voters or the noxious weed control board of an adjacent county, or the director of agriculture could order activation in response to a confirmed infestation of class A or class B noxious weeds in the county. RCW 17.10.040. Upon activating a county weed control board, the local legislative authority was required to divide the county into five geographic areas and appoint a representative from each to serve, along with a county extension agent, as initial members of the board. RCW 17.10.050(1). Thereafter, the county legislative authority's ongoing involvement with the county weed control board was generally limited to responding to budget requests from the board, appointing replacements for board members from candidates proposed by the board, and filling board vacancies. RCW 17.10.240, .050(2), (4). Otherwise, the weed control board operated independently, although subject to the provisions of chapter 17.10 RCW, which comprehensively regulates the governance, operation, and authority of activated county boards.
¶ 4 Lincoln County activated its noxious weed control board in 1970. Five days before the public hearing required by RCW 17.10.040, the county's board of commissioners published a notice in the Almira Herald, the Times Publishing Company, the Wilbur Register, and the Odessa Recordall weekly *1059 newspapers in Lincoln County. The notice announced the time and place of the planned meeting, and that its purpose was to determine whether there was a need, due to damaging infestation of noxious weeds, to activate the county weed control board.
¶ 5 Following the hearing on March 3, 1970, the county commissioners passed Resolution No. 117286, activating the weed control board. The county commissioners divided the county into five areas as required by statute and appointed a representative from each to serve as a voting member of the weed control board. They also appointed a Lincoln County extension agent.
¶ 6 Thirty-six years later, in August 2006, the weed control board recorded a notice of claim of lien against property owned by Bert Hook in Lincoln County, asserting that labor was performed and material was furnished to eradicate noxious weeds on his property in the sum of $1,066.22 plus interest at the rate of 12 percent per annum. By Mr. Hook's own recount, this was the third time he had been drawn into court proceedings by weed control board action after resisting the penalties imposed on him by the weed control board for about 20 years. Br. of Appellant at 13 & n.4. This time, Mr. Hook responded with the action below, which he commenced in November 2008, seeking a declaration that Resolution No. 117286 was unlawfully enacted and was ineffective. He sought a judgment enjoining the county and the weed control board from acting until validly activated and releasing the lien encumbering his properties. He based his claim that Resolution No. 117286 was void on his contention that it was an exercise of local police power that could not be effective unless enacted with the 10 days' prior notice required by RCW 36.32.120(7).
¶ 7 Mr. Hook used the discovery process to request and review county records. He contends that they reveal extensive irregularities in the governance, operation, and recordkeeping by the weed control board; irregularities that he identified in the trial court below and outlines in his briefing on appeal. Br. of Appellant at 9-13.
¶ 8 In early November 2009, Mr. Hook filed a motion for summary judgment, arguing that there was no genuine issue of material fact and the superior court could determine as a matter of law that Lincoln County was required, but had failed, to comply with RCW 36.32.120(7) in enacting Resolution No. 117286. The county and the weed control board responded with their own motions for judgment on the pleadings or summary judgment.
¶ 9 The cross motions were argued in February 2010, following which the parties requested and were granted leave to file supplemental briefing. After considering the briefing and further argument, the court issued a decision accepting the position of the county and the weed control board. In October 2010, it entered an order granting their motions and denying Mr. Hook's. When the order was presented for entry, Mr. Hook asked for leave to amend his complaint, but without submitting a proposed amended complaint. The court denied the motion.
¶ 10 Mr. Hook moved for reconsideration, rearguing the effectiveness of Resolution No. 117286 and his motion to amend. He also made new arguments that the weed control board had operated "as a little fiefdom, independent of any elected county legislative authority, and in violation of state law" in the years following its activation. Clerk's Papers (CP) at 178. He still submitted no proposed amended complaint.
¶ 11 In December 2010, the trial court denied Mr. Hook's motion for reconsideration. Mr. Hook appealed the initial order and the order on reconsideration.

ANALYSIS

I
¶ 12 Mr. Hook first challenges the trial court's orders denying his motion for summary judgment and granting the county's and the weed control board's motions. He argues that in proposing and passing Resolution No. 117286, the county commissioners "adopted" the noxious weed control regulation set forth in chapter 17.10 RCW, which is a police regulation. He argues that by statute, the county's adoption of such a regulation cannot become effective unless *1060 adopted at a public hearing following at least 10 days' notice. RCW 36.32.120(7). It is undisputed that only 5 days' notice was given before the Lincoln County commissioners adopted Resolution No. 117286.
¶ 13 On summary judgment, the moving party bears the initial burden of proving that there is no genuine issue of material fact. Young v. Key Pharm., Inc., 112 Wash.2d 216, 225, 770 P.2d 182 (1989). In this case the parties agreed that the material facts were not in dispute and that the cross motions presented an issue of law as to which summary judgment was appropriate. We review orders granting summary judgment and issues of law de novo. Hisle v. Todd Pac. Shipyards Corp., 151 Wash.2d 853, 860, 93 P.3d 108 (2004); Fed. Way Sch. Dist. No. 210 v. Vinson, 172 Wash.2d 756, 765, 261 P.3d 145 (2011).
¶ 14 The county and the weed control board make a threshold argument that Mr. Hook's challenge to establishment of the weed control board was time barred under RCW 36.32.330, which provides that appeals from a decision or order of a board of county commissioners "shall be taken within twenty days after the decision or order." But legislation unlawfully adopted and void may be attacked at any time. City of Spokane v. Harris, 25 Wash.App. 345, 348, 606 P.2d 291 (1980) (citing Swartout v. City of Spokane, 21 Wash.App. 665, 674, 586 P.2d 135 (1978), review denied, 91 Wash.2d 1023, 1979 WL 71642 (1979); Puget Sound Alumni of Kappa Sigma, Inc. v. City of Seattle, 70 Wash.2d 222, 422 P.2d 799 (1967)). Insofar as Mr. Hook was challenging the constitutionality of what would be a legislative act if we accepted his characterization, his claim was not time barred.
¶ 15 Article XI, section 11 of the Washington Constitution grants counties and other local governments broad police powers, providing, "Any county, city, town or township may make and enforce within its limits all such local police, sanitary and other regulations as are not in conflict with general laws."
¶ 16 A county legislative authority enacting a local regulation under the authority granted by the state constitution must do so in accordance with RCW 36.32.120, which provides in part:
The
....
(7) Make and enforce, by appropriate resolutions or ordinances, all such police and sanitary regulations as are not in conflict with state law.
It goes on to provide that the legislative authorities of the counties,
within the unincorporated area of the county may adopt by reference Washington state statutes and recognized codes and/or compilations printed in book form relating to the construction of buildings, the installation of plumbing, the installation of electric wiring, health, or other subjects, and may adopt such codes and/or compilations or portions thereof, together with amendments thereto, or additions thereto: PROVIDED, That except for Washington state statutes, there shall be filed in the county auditor's office one copy of such codes and compilations ten days prior to their adoption by reference, and additional copies may also be filed in library or city offices within the county as deemed necessary by the county legislative authority: PROVIDED FURTHER, That no such regulation, code, compilation, and/or statute shall be effective unless before its adoption, a public hearing has been held thereon by the county legislative authority of which at least ten days' notice has been given.
RCW 36.32.120(7).
¶ 17 In regulating the destruction or removal of noxious weeds, chapter 17.10 RCW is a proper exercise of the legislature's police power. See Carstens v. DeSellem, 82 Wash. 643, 650-51, 144 P. 934 (1914) (police power extends to protecting agricultural property from contagious disease and pests); 1966 Op. Att'y Gen. No. 114, and cases cited therein. The issue raised by Mr. Hook's complaint is whether the board of county commissioners of Lincoln County exercised its own police power, making chapter 17.10 RCW local law, in enacting Resolution No. 117286.
*1061 ¶ 18 The rules of statutory construction apply equally to ordinances and to state statutes. City of Bothell v. Gutschmidt, 78 Wash.App. 654, 659, 898 P.2d 864 (1995) (citing World Wide Video, Inc. v. City of Tukwila, 117 Wash.2d 382, 391, 816 P.2d 18 (1991), cert. denied, 503 U.S. 986, 112 S.Ct. 1672, 118 L.Ed.2d 391 (1992)). Ordinances and statutes are interpreted according to the plain and ordinary meaning of the language used. Id.
¶ 19 Counties may "adopt by reference" the building and construction codes that RCW 36.32.120(7) cites as examples. Otherwise, reported decisions most commonly address counties' adoption by reference of state criminal laws that a county (or a city, under similar provisions included at RCW 35A.12.140) wishes to enforce as local law. Incorporation of state statutes into local law may be necessary before violations may be prosecuted in limited jurisdiction courts. See, e.g., City of Medina v. Primm, 160 Wash.2d 268, 281, 157 P.3d 379 (2007) (because the jurisdiction of city's municipal court was exclusively limited to "`matters arising from ordinances of the city,'" it could hear prosecution of charges under state laws if the state laws were adopted by reference by the city (quoting former RCW 3.46.030 (2005))); City of Auburn v. Gauntt, 160 Wash.App. 567, 569, 249 P.3d 657 (a city that had not expressly adopted state criminal statutes could not prosecute them in municipal court), review granted, 172 Wash.2d 1004, 258 P.3d 685 (2011). The common characteristic of such adoption is the county's desire and intent to exercise its own authority to enforce the law as local law.
¶ 20 In City of Medina, the plain language used to adopt state law by referencelanguage of the sort one would expect to see, if a local legislative authority was adopting state law as local lawwas that the state laws at issue "`are hereby adopted by reference as and for a portion of the Medina Traffic Code.'" 160 Wash.2d at 281, 157 P.3d 379 (quoting chapter 10.14 of the Medina City Code); cf. City of Auburn, 160 Wash. App. at 573-75, 249 P.3d 657 (state statute's reference to city's responsibility to prosecute crimes committed in its jurisdiction "`whether filed under state law or city ordinance'" was not enough to transform state statutes into local law (quoting RCW 39.34.180)).
¶ 21 The language of Resolution No. 117286 does not purport to adopt chapter 17.10 RCW by reference and make it local law. The resolution states:
WHEREAS, THE WASHINGTON STATE LAWS, 1969 First Extraordinary Session, Chap. 113 New Section; Sec. 2 provides for a County Noxious Weed Control Board, and
WHEREAS, the Lincoln County Board of Commissioners have this day at 11:00 A.M. held a hearing pursuant to NEW SECTION, Sec. 4 of Chapter 113 and found there is a need, due to damaging infestation of noxious weeds, to activate the County Noxious Weed Control Board,
BE IT THEREFORE RESOLVED by the Board of County Commissioners this 3rd day of March, 1970, that there be activated a Lincoln County Noxious Weed Control Board pursuant to the provisions of Washington State Laws 1969 1st Extra Session, Chapter 113[.]
BE IT FURTHER RESOLVED, pursuant to Section 5(1), Chapter 113, that the County be divided into five sections as shown on the map attached hereto and made a part of this resolution and that one voting member from each section be appointed to the Lincoln County Noxious Weed Control Board who, together with the Lincoln County Extension Agent appointee, will comprise the membership of the Board.
CP at 15. Beyond this language, the resolution only identifies the five voting members appointed to the weed control board and concludes, "Passed and adopted by the Lincoln County Board of Commissioners this 3rd day of March, 1970." Id. The resolution makes no reference to "adopting" all or any part of chapter 17.10 RCW. It does not suggest that the provisions of the chapter are made a part of its county code. It does not in any way suggest that the county expects or intends to enforce the law.
¶ 22 Beyond this lack of any textual support for Mr. Hook's argument that the county commissioners were adopting what already *1062 existed as state law, the commissioners had no reason to adopt chapter 17.10 RCW as local law. Following activation of the weed control board, there was nothing more that the county needed to do, or seemingly wanted to do, beyond what was already required of it by the state statute.
¶ 23 Finally, given the comprehensive nature of the regulation provided by the chapter and by other state noxious weed regulation, the state had arguably preempted the field, leaving Lincoln County without police power to adopt noxious weed control regulation in 1970. That was the conclusion of the Washington Attorney General in 1992 Op. Att'y Gen. No. 1, 1992 WL 512183, at *5, which summarized opinions it had earlier expressed on legislative preemption of weed control law, as follows:
In an opinion to Philip A. Davidson, Prosecuting Attorney, dated October 2, 1935, this office was asked whether a county had the authority to levy taxes or to appropriate money for weed control outside or in addition to budgets of weed districts organized under the then existing version of chapter 17.04 RCW. The opinion reviewed the development of weed control law in Washington, and concluded that authority independent of chapter 17.04 RCW did not exist. 1935-36 Ops. Att'y Gen. 54. This view also was taken in another opinion to Philip A. Davidson, Prosecuting Attorney, dated July 9, 1937 (1937-38 Ops. Att'y Gen. 114). In essence, these opinions determined that chapter 17.04 RCW completely occupied the field of noxious weed control, and therefore preempted independent county regulation of noxious weeds.
Although chapter 17.04 RCW has been amended on several occasions since these opinions were authored, we conclude that these later amendments do not materially affect the conclusions reached in the opinions. Moreover, we believe that enactment of chapters 17.06 and 17.10 RCW suggests that the Legislature has even further occupied the field: Chapter 17.06 authorizes the regional regulation of noxious weeds by intercounty weed districts, and, as we pointed out in [Attorney General Opinion] 1990 No. 11, chapter 17.10 RCW goes beyond chapter 17.04 RCW by extending regulation of noxious weeds from unincorporated portions of the county to the county as a whole.
(Footnote omitted.) A county's police power, while broad, does not exist where it would be "in conflict with general laws." WASH. CONST. art. XI, § 11. Based on the attorney general's detailed review in its 1992 opinion of the scope of regulation included in chapter 17.10 RCW, the opinion concluded that county regulation of noxious weeds was strictly limited to short-term regulation under the single circumstance provided for by state law. RCW 17.10.040(3) (creating a county option to independently attempt eradication of a confirmed class A or B noxious weed infestation, following notice from the director of agriculture, but for only one year).
¶ 24 We need not decide whether we fully subscribe to the attorney general's views because the thorough regulation of weed control by state law and the language of Resolution No. 117286 fully supports the conclusion, as a matter of law, that the resolution did not adopt chapter 17.10 RCW, by reference or otherwise, as local law. Through the resolution, the commissioners simply made a finding whose result was to cause comprehensive state regulation to be exercised not by the director of agriculture, but by the county weed control board earlier created by the legislature.
¶ 25 Mr. Hook also suggests that the county commissioners' enactment of Resolution No. 117286 violated the Open Public Meetings Act of 1971, chapter 42.30 RCW, and specifically RCW 42.30.060(1). But the only purported violation of the open meeting act we can discern from his brief is that the March 3, 1970 date on which the resolution was adopted is not the date he contends was the date "fixed by law or rule" referred to in RCW 42.30.060(1), given his insistence that the 10-day notice requirement of RCW 36.32.120(7) applies. We have rejected his argument that 10-day notice was required.
¶ 26 A person challenging the validity of an enactment has the burden to show the action was improper. Henry v. Town of Oakville, 30 Wash.App. 240, 247, 633 P.2d 892 (1981), review denied, 96 Wash.2d 1027, *1063 1982 WL 226473 (1982). The burden is a heavy one and requires clear, cogent, and convincing evidence to sustain it. In the absence of an affirmative showing to the contrary, it is presumed that the mandatory provisions of the law were duly observed, in substance at least, in the ordinance's enactment. Gutschmidt, 78 Wash.App. at 660, 898 P.2d 864 (quoting Buell v. City of Bremerton, 80 Wash.2d 518, 529, 495 P.2d 1358 (1972) (Neill, J., partially dissenting)). Mr. Hook has made no showing of an open meeting act violation.
¶ 27 The trial court properly granted summary judgment to the county and the weed control board and denied it to Mr. Hook.

II
¶ 28 In moving for reconsideration, Mr. Hook raised new arguments that he asked be considered as creating issues requiring trial. Alternatively, he asked that the court allow him to amend his complaint to assert the new theories. He never filed a proposed amended complaint. The trial court's denials of his motions to amend and for reconsideration are the basis of his remaining assignments of error.
¶ 29 In general, Mr. Hook's new arguments were that legislative authority had been unconstitutionally delegated to the weed control board, a nonrepresentative body, because it was operating without certain standards or guidelines and without procedural safeguards. See, e.g., Larson v. Seattle Popular Monorail Auth., 156 Wash.2d 752, 761-62, 131 P.3d 892 (2006); King County Water Dist. No. 54 v. King County Boundary Review Bd., 87 Wash.2d 536, 545, 554 P.2d 1060 (1976); King County v. Taxpayers of King County, 133 Wash.2d 584, 605-07, 949 P.2d 1260 (1997), cert. denied, 522 U.S. 1076, 118 S.Ct. 854, 139 L.Ed.2d 754 (1998); Robison v. Dwyer, 58 Wash.2d 576, 583-84, 364 P.2d 521 (1961). He argued that as an independent agency without the proper guidelines for assessments or oversight, the board had become an undemocratic body infringing on the constitutional rights of himself and others.
¶ 30 Whether to grant a motion for reconsideration is a matter within the sound discretion of the trial court; we will not reverse the court's ruling absent a showing of manifest abuse of discretion. Wilcox v. Lexington Eye Inst., 130 Wash.App. 234, 241, 122 P.3d 729 (2005), review denied, 157 Wash.2d 1022, 142 P.3d 609 (2006). Generally, new theories of the case presented as part of a motion for reconsideration need not be considered. Id.; Int'l Raceway, Inc. v. JDFJ Corp., 97 Wash.App. 1, 7, 970 P.2d 343 (1999). By the time of Mr. Hook's motion for reconsideration his case had been pending for almost two years, the trial court had entertained cross motions for summary judgment that the parties originally agreed could be resolved as a matter of summary judgment, and it had allowed supplemental briefing, yet new theories were being argued for the first time. Given those circumstances, the trial court did not abuse its discretion in denying the motion for reconsideration.
¶ 31 CR 15(a) governs amendments to pleadings and specifically provides that "a party may amend [his] pleading only by leave of court ... and leave shall be freely given when justice so requires." However, "[i]f a party moves to amend a pleading, a copy of the proposed amended pleading, denominated `proposed' and unsigned, shall be attached to the motion." Id. The word "shall" is presumptively imperative and operates to create a duty. Crown Cascade, Inc. v. O'Neal, 100 Wash.2d 256, 261, 668 P.2d 585 (1983). Both the opposing party and the court have a legitimate need to see the proposed amended pleading in order to address and assess relevant issues of prejudice and futility.[1]
*1064 ¶ 32 Mr. Hook argues that his original complaint reserved the right to amend. Where such a so-called reservation is included in a complaint to identify matters as to which a party needs additional information and expects to amend, it might have some bearing on issues of reasonableness and prejudice when leave to amend is later requested. Otherwise, it is meaningless. A party's right to amend is controlled by the applicable civil rules and standards, not by the party's own dictates.
¶ 33 A trial court's denial of a motion for leave to amend will not be disturbed on appeal absent a manifest abuse of discretion or a failure to exercise discretion. Caruso v. Local Union No. 690 of Int'l Bhd. of Teamsters, 100 Wash.2d 343, 351, 670 P.2d 240 (1983). A trial court abuses its discretion when its decision is based on untenable grounds or reasons. Wilcox, 130 Wash.App. at 241, 122 P.3d 729. Mr. Hook's failure to provide the amended complaint required by CR 15(a) was a sufficient basis for denying the motion. As observed by the court, "I don't even have anything in front of me that would indicate what that amendment is or is intended to be." Report of Proceedings at 17. The court recognized that the county and the weed control board were prejudiced by Mr. Hook's request that he be granted leave to file an as-yet unprepared amended complaint. It did not abuse its discretion in denying the motion.
¶ 34 We affirm the trial court's orders and judgment.
WE CONCUR: KULIK, C.J., and KORSMO, J.
NOTES
[1] From Mr. Hook's description of his intended claims, amendment might have been futile. Strikingly, Mr. Hook's argument did not rely on regulatory shortcomings in chapter 17.10 RCW; it relied instead on what he tells us discovery has revealed about the actual operations of the weed control boardoperations that he represents are out of compliance with the requirements of the statute. The constitutionality of the delegation does not depend on whether standards of conduct and procedural safeguards are followed, it depends on whether they are provided. Review of chapter 17.10 RCW reveals numerous standards and safeguards for county weed control board operations. Remedies may exist for an agency's noncompliance with statute if timely asserted by a party having standing; declaring the law unconstitutional based on individuals' failure to comply is not one of them.