[No. 32623.   Department One.   November 5, 1953.]

THE STATE OF WASHINGTON, *on the Relation of George M. Hollenbeck, Plaintiff,* v. HAROLD CARR *et al., Respondents.*[1]

*The Attorney General* and *Moksha W. Smith, Assistant,* for relator.

*Delbert W. Johnson,* for respondent.

HILL, J.—The acting director of the department of public assistance of the state of Washington seeks a writ of mandamus from this court to compel the county commissioners of Mason county to approve the payment of certain administrative expenses in connection with the general assistance program in that county.

"Public assistance" includes Federal-aid assistance and *general assistance.* "Federal-aid assistance" includes old

[1]Reported in 262 P. (2d) 966.

age assistance, aid to dependent children, services to crippled children, child welfare services, services to other handicapped persons, aid to the needy blind, and any other category for which the Federal government provides or for which it may hereafter provide matching funds. *"General assistance" is assistance and services of any character provided to needy persons not otherwise provided for, to the extent of their need.* It includes *"necessary medical, dental, optical, surgical, hospital and nursing care,"* etc. Laws of 1939, chapter 216, § 1, p. 864, as amended by Laws of 1947, chapter 289, § 1, p. 1363. It includes *"hospital, institutional and medical care, excluding tuberculosis hospitalization."* Laws of 1939, chapter 216, § 10, p. 871, as amended by Laws of 1943, chapter 172, § 2, p. 551.

The legislature has declared that "The care, support and relief of needy persons is . . . a joint Federal, state and county function"; and that the counties of the state are

". . . charged with the responsibility, by and through their respective Boards of County Commissioners, for the administration of public assistance to such persons; . . ."

subject, however, to state supervision. Laws of 1939, chapter 216, § 5, p. 867.

Under the statutes now in effect (amendments by the 1953 legislature, relating to the transfer of authority, not being effective until January 1, 1954; see Laws of 1953, chapter 174, p. 343 *et seq.*, and Laws of 1953, Ex. Ses., chapter 3, p. 867), the board of county commissioners of each county, to carry out this responsibility, is required to establish a county welfare department "which shall have full charge of administration of public assistance within the county," and which shall be under the supervision of a county administrator appointed by the board of county commissioners in accordance with the rules and regulations of the merit system. Laws of 1939, chapter 216, § 4, p. 866, as amended by Laws of 1941, chapter 128, § 2, p. 380.

The state undertakes to make available to the counties from state and Federal funds sufficient moneys to enable the counties to discharge their responsibility with respect to

Federal-aid assistance; while *the respective counties provide funds by means of a county tax levy to discharge their responsibility for general assistance.* Laws of 1939, chapter 216, § 5, p. 867. Until 1953, each county is required to levy annually a tax of not less than two mills for public assistance purposes; however, it is clear that it is to be used for general assistance purposes only. The amount raised by the county tax, together with revenues accruing to the county from the administration of the public assistance program, is deposited in a county current expense fund in an "assistance account," and disbursements from that account are made *"primarily for general assistance purposes."* If a county does not require the amount in the assistance account for *general assistance purposes*, the board of county commissioners may by resolution release the amount of the overplus to the current expense fund for general county purposes. Laws of 1939, chapter 216, § 10, p. 871, as amended by Laws of 1943, chapter 172, § 2, p. 551. Thus, no part of the two-mill levy for general assistance ever reaches the state treasury or any of its funds.

If the amount in the assistance account is not adequate for *general assistance purposes*, the county may obtain a special grant-in-aid of state funds under the conditions prescribed in the Laws of 1939, chapter 216, § 11, p. 872, as amended by the Laws of 1943, chapter 172, § 3, p. 552.

While the Federal-aid assistance authorized by the county administrator is paid by warrant of the state auditor (Laws of 1939, chapter 216, § 9, p. 870), disbursements for general assistance from the assistance account are

" . . . by warrant of the County Auditor upon a prescribed form authenticated by the County Administrator and approved by the Board of County Commissioners." Laws of 1939, chapter 216, § 10, p. 871, as amended by Laws of 1943, chapter 172, § 2, p. 551.

And even when the state makes a grant-in-aid to a county for general assistance purposes, it is by way of a reimbursement to this assistance account. See Laws of 1939, chapter 216, § 11, p. 872, as amended by Laws of 1943, chapter 172, § 3, p. 552.

It is the failure of the board of county commissioners to approve warrants drawn for the payment of certain *administrative expenses of the general assistance program* in Mason county that has resulted in this application for a writ of mandamus. The county commissioners admit by their answer that $3,920 will be the proportionate cost of administering the general assistance program in Mason county for the year 1953, and that there is a sufficient amount in the assistance account to pay such administrative costs.

We have no difficulty in determining that the expenses of administration of the general assistance program constitute a proper charge against the assistance account created for general assistance purposes. This answers the question presented to us by the litigants; however, we are troubled by a problem which the litigants conveniently avoided, *i.e.*, Are the county commissioners state officers?

■ Our original jurisdiction in mandamus is limited to writs directed to state officers. Constitution, Art. IV, § 4. The litigants seemingly are content to rely upon our holdings in *State ex rel. Price v. Peterson*, 198 Wash. 490, 88 P. (2d) 842 (1939), and *Maskule v. State*, 3 Wn. (2d) 121, 99 P. (2d) 929 (1940), that county commissioners serve in a dual capacity and are state officers for certain purposes when acting pursuant to our social welfare enactments. The holdings in those cases were based on the language of the Laws of 1937, chapter 180, p. 697 *et seq*. That act specifically stated that boards of county commissioners constituted administrative boards for all matters involving public assistance in their respective counties, and that they were agents in that capacity for the state department of social security, subject to such regulations and restrictions as that department might promulgate. Laws of 1937, chapter 180, §§ 2, 7, pp. 698, 702.

That act was repealed by the Laws of 1939, chapter 216, § 35, p. 883, save for one section. The one section which survived provides that the various boards of county commissioners are *agents* of the state department of social security "in determining the local causes which lead to the

need for public assistance and in performing such activities as will tend to remove those causes." Laws of 1937, chapter 180, § 11, p. 705. Apart from this agency for carrying on "preventive work," we find in subsequent welfare legislation no designation of the county commissioners as agents of the state department of social security. It seems to us clear that, in the 1939 and subsequent acts, any idea that the boards of county commissioners serve as "an administrative board for all matters involving public assistance to their respective counties" (Laws of 1937, chapter 180, § 7, p. 702) and in that capacity are agents of the state department of social security, has been abandoned.

The 1939 act contains the legislative declaration that "The care, support and relief of needy persons is . . . a joint Federal, state and county function," and the further statement that the several counties of the state are "charged with the responsibility, by and through their respective Boards of County Commissioners, for the administration of public assistance to such persons," but subject to state supervision. Laws of 1939, chapter 216, § 5, p. 867. However, the tenor of that act and the whole trend of subsequent legislation has been to vest the ultimate control of all Federal-aid assistance in the department of social security (now the department of public assistance), and practically the only vestige of county autonomy is in the field of general assistance, where, as indicated, a county tax provides funds for that purpose and the boards of county commissioners approve the warrants.

This trend reaches its climax in the Laws of 1953, chapter 174, p. 343 *et seq.*, which changes the name of the department of social security to the department of public assistance (§ 1, p. 343); makes the county administrator an appointee of the director of that department (§ 13, p. 351); makes the two-mill levy, heretofore a county tax, a state tax (§ 43, p. 371); and, although it repeats the now traditional declaration that the care, support and relief of needy persons is a joint Federal, state and county function (§ 12, p. 350), removes every vestige of county control or authority. The county becomes merely a geographical sub-

division which is used as a convenient administrative unit by the state department of public assistance.

However, when it was realized that no funds would be available from the state two-mill tax levy made in 1953 until 1954, the extraordinary session of 1953 enacted legislation to provide that the Laws of 1953, chapter 174, § 43, p. 371,

". . . shall not take effect until January 1, 1954, . . . and until that date the several counties of the state shall remain responsible for general assistance to the extent provided under pre-existing law." Laws of 1953, Ex. Ses. chapter 3, § 1, p. 867.

Hence, for the purposes of this decision we are concerned with "pre-existing law."

■ We fail to find any convincing evidence since the repeal of the 1937 act hereinabove referred to, that the legislature has regarded boards of county commissioners as agents of the state department of social security. The fact that prior to the 1953 act such boards appointed the county administrators, who were held to be state employees (*Maskule v. State, supra*), does not make state officers of county commissioners any more than does the fact that a board of county commissioners can fill a vacancy caused by the death of a member of the legislature. Constitution, Art. II, § 15, as amended (see amendment 13).

The theory has been that administration of the public assistance program was by the counties, subject to state supervision, except as the various phases of the program have been withdrawn from county administration and the department of social security has assumed "full charge and control over the administration thereof." Laws of 1939, chapter 216, § 13, p. 873. For all practical purposes, such supervision by the state may be control by the state. Note the following three provisions:

(1) The supervision by the department of social security "over county administration of public assistance funds" is made effective by a series of "agreements" by the boards of county commissioners filed with the department of social

security and made a part of the county plan of administration. Laws of 1939, chapter 216, § 7, p. 868, as amended by Laws of 1943, chapter 172, § 1, p. 550.

(2) The department can make compliance with its uniform standards a condition to the receipt of state and Federal funds by the county for public assistance purposes. Laws of 1939, chapter 216, § 14, p. 873.

(3) In the event of noncompliance with its rules and regulations, the state department of social security can

" . . . take over the administration of public assistance programs in any county involved until compliance shall have been effected, during which time the department shall have power to authorize and approve the expenditure of all public assistance funds within the county." Laws of 1939, chapter 216, § 6, p. 868.

These are not the methods by which the state customarily controls its "officers"; they are more suggestive of means of coercing the boards of county commissioners to keep them in line with the program and procedures of the state department of social security, which is declared to be *"the single state agency to supervise the administration of public assistance."* Laws of 1939, chapter 216, § 6, p. 867. Such supervision does not make the county commissioners state officers within the purview of our state constitution, Art. IV, § 4. (It is significant that the successor to the department of social security, *i.e.,* the department of public assistance, is "the single state agency to *administer* public assistance." Laws of 1953, chapter 174, § 6, p. 345.)

█ The county commissioners not being state officers, we have no original jurisdiction in the premises; hence, the application for a writ of mandamus is dismissed.

GRADY, C. J., MALLERY, and WEAVER, JJ., concur.

OLSON, J., concurs in the result.