# NOTICE:   SLIP OPINION
## (not the court's final written decision)

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

FILE

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
MAY 20, 2021

_González, C.J.___
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
MAY 20, 2021

SUSAN L. CARLSON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

|  |  |  |
|---|---|---|
| DAVID LADENBURG, in his capacity as a Tacoma Municipal Court Judge | ) ) ) ) | No. 98319-4 |
| Petitioner, | ) ) ) | |
| v. | ) ) | En Banc |
| DREW HENKE, in her capacity as the Presiding Judge of the Tacoma Municipal Court | ) ) ) ) ) ) | Filed: May 20, 2021 |
| Respondent. | ) ) | |

YU, J.— This case concerns a conflict between Tacoma Municipal Court Judge David Ladenburg and the presiding judge of that court, Judge Drew Henke. Judge Ladenburg petitions this court to issue a writ of mandamus or prohibition against Judge Henke, directing her to withdraw an order of consolidation she issued pursuant to General Rule 29 (GR 29). Before we may exercise original jurisdiction over this petition, the threshold legal question we must answer is whether a municipal judge, such as Judge Henke, is a "state officer" for purposes

*Ladenburg v. Henke*, No. 98319-4

of article IV, section 4 of the Washington Constitution.  We hold that a municipal

judge is not a state officer and therefore dismiss Judge Ladenburg's petition.

BACKGROUND

Petitioner David Ladenburg is a Tacoma Municipal Court judge.

Respondent Drew Henke is the presiding judge of the same court.  In May 2017,

*City of Tacoma v. Nester* (Case 1) was assigned to Judge Ladenburg.  Nester and

the city agreed to enter a stipulated order of continuance (SOC) that would permit

Nester to have his case dismissed if he met certain conditions.

In 2018, the city filed additional cases against Nester (Case 2 and Case 3).

In both cases, defense counsel filed affidavits of prejudice against Judge

Ladenburg.[1]  As a result, these cases were reassigned to Judge Henke and the only

other Tacoma Municipal Court judge, Judge Dwayne Christopher.

In June 2018, Judge Ladenburg revoked Nester's SOC in Case 1 as a result

of the filings in Case 2 and Case 3 and found Nester guilty.  Nester appealed the

decision.  Pierce County Superior Court ruled that the trial court lacked the

authority to revoke the SOC without a motion from the prosecutor and reversed the

revocation and finding of guilt.  On remand, Judge Ladenburg reinstated the SOC.

---

[1] An "affidavit of prejudice" is "an affidavit alleging that the party cannot have a fair and impartial trial by reason of the interest or prejudice of the judge or for other ground provided by law."  CrRLJ 8.9(b).  According to an attorney in the city attorney's office, "For the past four years, the [public] defenders have filed affidavits of prejudice in nearly all cases assigned to Judge Ladenburg."  Parties' Agreed R. at 16 (Jean Hayes' decl.).

2

*Ladenburg v. Henke*, No. 98319-4

In June 2019, the city filed another case against Nester (Case 4) and, again, defense counsel filed an affidavit of prejudice against Judge Ladenburg. A jury trial was held before Judge Christopher, and Nester was acquitted.

On January 13, 2020, Nester moved, before Judge Henke, to consolidate Case 1 with Cases 2 and 3. Before ruling on Nester's motion, Judge Henke e-mailed Judge Ladenburg and Judge Christopher, notifying them of her intent to grant the motion unless further research indicated she was unable to do so. Judge Henke also told Judge Ladenburg not to proceed with another revocation of the SOC in Case 1 without the consent of both parties.

Despite this direction, and while Nester's motion to consolidate was still pending, Judge Ladenburg proceeded with Nester's revocation hearing on January 15 over defense counsel's objection and requests for a continuance. Judge Ladenburg then conducted "an extensive fact-finding hearing involving the same subject matter tried in Case 4," the case in which Nester was acquitted. Parties' Agreed R. at 18. Judge Ladenburg entered findings and conclusions, revoked Nester's SOC and found him guilty, and scheduled a sanctions hearing.

On January 29, 2020, Judge Henke sent an e-mail to Judge Ladenburg notifying him that she would be granting the defense's motion to consolidate all three of the pending Nester matters and assigning the consolidated cases to Judge Christopher. She further directed Judge Ladenburg to either continue the sanctions

3

*Ladenburg v. Henke*, No. 98319-4

hearing or vacate his earlier findings because Case 1 was no longer properly before him. Judge Ladenburg responded in part, "I am not aware of any authority that would give you authority to remove a matter from my court . . . and act sua sponte to vacate my findings[.] I believe you would need my consent to take this action as to the matter pending in my court." *Id*. at 5-6.

On February 10, 2020, Nester filed a motion before Judge Henke to vacate Judge Ladenburg's findings. Judge Henke denied the motion to vacate, but she formally granted Nester's earlier motion to consolidate his pending cases and assigned the consolidated cases to Judge Christopher. The order stated that "the Presiding Court finds that it will be most expeditious and efficient to have [Judge Christopher] conduct future hearings on this case as [he] heard the underlying trial case and has more factual knowledge from that." *Id*. at 13-14.

On February 17, Judge Henke e-mailed Judge Ladenburg, acknowledging that she did not have the authority to vacate his findings in Case 1 but stating that she did have authority as the presiding judge to transfer all three cases to Judge Christopher pursuant to GR 29 "in order to resolve the disputes in these cases fairly and expeditiously."[2] *Id*. at 7.

---

[2] "The Presiding Judge is responsible for leading the management and administration of the court's business, recommending policies and procedures that improve the court's effectiveness, and allocating resources in a way that maximizes the court's ability to resolve disputes fairly and expeditiously." GR 29(e).

4

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Ladenburg v. Henke*, No. 98319-4

On February 21, Judge Ladenburg e-mailed Judge Henke, objecting to the consolidation and challenging her interpretation of GR 29. Judge Ladenburg also stated he would be appealing Judge Henke's consolidation order, and he requested that the court stay the Nester cases until after the appeal process had concluded. Judge Ladenburg stated that if the cases were not stayed pending appeal, then he would proceed with Nester's sanctions hearing.

In response to Judge Ladenburg's request, Judge Christopher agreed to place the Nester matters on hold. In March 2020, Nester asked Judge Henke to strike the sanctions hearing, but no action has yet been taken. *Id*. at 10. On March 24, 2020, Judge Ladenburg filed an original petition against a state officer in this court.

ANALYSIS

Judge Ladenburg's petition against a state officer requests that we exercise our original jurisdiction to issue a writ of mandamus or prohibition to Judge Henke pursuant to article IV, section 4 of our state constitution or chapter 7.16 RCW. We must first determine whether we in fact have jurisdiction in this case because this court will dismiss a petition for a writ where it lacks original jurisdiction. *See State ex rel. Hollenbeck v. Carr*, 43 Wn.2d 632, 638, 262 P.2d 966 (1953).

While the Washington State Constitution does confer original jurisdiction to the Supreme Court to issue writs of mandamus, the plain language of our

5

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Ladenburg v. Henke*, No. 98319-4

constitution limits such jurisdiction to actions against "state officers." WASH. CONST. art. IV, § 4. An original proceeding pursuant to chapter 7.16 RCW would likewise be limited to state officers because our original jurisdiction to issue writs "is fixed by constitutional limitations, and is derived from the constitution, and not in pursuance of any legislative enactment." *Winsor v. Bridges*, 24 Wash. 540, 547, 64 P. 780 (1901). Therefore, in order to establish jurisdiction, we must determine whether municipal judges such as Judge Henke are "state officers" within the meaning of article IV, section 4. This is a matter of first impression for our court.

We hold that municipal court judges are not state officers, thus we lack jurisdiction to issue a writ of mandamus or prohibition against Judge Henke. We therefore dismiss Judge Ladenburg's petition.

A.    In this context, "state officers" refers to a narrow set of elected officials who exercise state-level authority and are in turn controlled by constitutional provisions directly governing their appointment, salary, and impeachment

Article IV, section 4 states, "The supreme court shall have original jurisdiction in habeas corpus, and quo warranto and mandamus as to all state officers, and appellate jurisdiction in all actions and proceedings." Our state constitution does not define "state officer," and its meaning is not apparent from the plain language of section 4 itself. We must therefore begin our analysis by interpreting the words "state officer" in accordance with their ordinary meaning "determined at the time they were drafted." *Wash. Water Jet Workers Ass'n v.*

6

*Ladenburg v. Henke*, No. 98319-4

*Yarbrough*, 151 Wn.2d 470, 477, 90 P.3d 42 (2004) (citing *State ex rel. O'Connell v. Slavin*, 75 Wn.2d 554, 557, 452 P.2d 943 (1969)). For guidance, we may refer to the framers' intent and the historical context. *Id*. (citing *Yelle v. Bishop*, 55 Wn.2d 286, 291, 347 P.2d 1081 (1959)).

As it existed in 1889, our state constitution did not define "state officers," although that phrase was used in multiple places. The original text of article III, section 25 stated that the compensation for state officers could not be changed "during the term for which they shall have been elected." The original text of article IV, section 3 stated that Supreme Court judges would be elected at the same time as state officers were elected, and article VI, section 8 defined the dates for such elections. Article V, section 2 notes that the governor and "state and judicial officers, except judges and justices of courts not of record, shall be liable to impeachment." These references indicate that when our constitution was enacted, "state officers" were, at a minimum, elected officers and subject to impeachment.

Four years after the constitution's enactment, this court examined the impeachment requirement for state officers when it considered whether the treasurer of a public college was subject to a writ of mandamus pursuant to article IV, section 4. *State ex rel. Stearns v. Smith*, 6 Wash. 496, 33 P. 974 (1893). The sole dissenting justice argued that the constitutional language in article IV was broad and did not distinguish between superior and inferior officers. However, the

7

majority disagreed, holding that article IV was narrow and that the framers intended the power of mandamus to extend not to all government officials but solely to "chief governmental officers of the state":

> The purpose of the constitution in setting up a supreme court was to provide a court for appeals; but it was deemed that cases might arise where the judicial power should be exercised against one of the chief governmental officers of the state in matters of such public importance that the cases should be at once passed upon by the supreme court, and therefore this power of mandamus . . . was conferred. But it was never intended that this court should be a general resort in proceedings to set in motion the hundreds of minor officers with whom citizens or other officers may have business.

*Id*. at 497-99.

The *Stearns* majority thus identified impeachment as the primary factor for whether a public official was a state officer for purposes of article IV, concluding that the framers intended "state officers" to be limited to those "superior officers" who were subject to removal through impeachment according to article V, section 2. *Id*. at 497-98. The court reasoned that without this limitation, then "officers of all grades would be subject to removal by impeachment only, and there would be no use of [article V, section] 3," which separately provides for the removal of "[a]ll officers not liable to impeachment." *Id*. at 498; WASH. CONST. art. V, § 3.

This court has consistently interpreted constitutional references to "state officers" as referring to a narrow group of high-ranking public officials. In 1892, in *State ex rel. Dyer v. Twichell*, this court held that superior court judges were "state officers" for purposes of article VI, section 8 (the timing of elections)

8

*Ladenburg v. Henke*, No. 98319-4

because their salaries are paid in part by the State, vacancies are filled directly by the governor, and the "character and extent of their jurisdiction" is statewide in character. 4 Wash. 715, 720, 31 P. 19 (1892). We have adhered to *Dyer*'s sound reasoning over the years. *See State ex rel. Edelstein v. Foley*, 6 Wn.2d 444, 448, 107 P.2d 901 (1940), *cited with approval in Riddle v. Elofson*, 193 Wn.2d 423, 428, 439 P.3d 647 (2019) (plurality opinion). We note that just a few decades after *Dyer*, in *State ex rel. Dunbar v. State Board of Equalization*, we held that for purposes of article IV, section 4, "[a] state office exists where there is reposed some part of the state's sovereign power." 140 Wash. 433, 437, 249 P. 996 (1926).

These cases show that for the purposes of constitutional analysis, "state officers" are limited to those elected officials whom the state controls through appointment, salary, and impeachment, and who, in turn, wield some state-level authority. An examination of these factors established early in our jurisprudence compels a conclusion that municipal court judges like Judge Henke are not state officers for the purposes of article IV, section 4.

B.     The factors that make a public official a "state officer" are not present in the case of a municipal court judge

1.     Appointment

To determine whether a public official is a state officer, we first look at the manner in which they are appointed to their position. Judge Ladenburg contends that municipal court judges are state officers because they are elected. But Judge

9

*Ladenburg v. Henke*, No. 98319-4

Ladenburg does not provide any constitutional or statutory basis that all Washington elected officials are state officers. If that were the only criterion, much of our early precedent on this issue would be either unnecessary or incorrect.

Moreover, while in general municipal judges are elected, the electorate is limited to the city in which the court is located, and any vacancies are filled by the chief executive officer of the city, that is, the mayor. RCW 35.20.150.[3] This is not the same type of direct state control exercised over superior and appellate courts, whose judges are chosen by a broad electorate and whose vacancies are appointed by the chief executive officer of the state, the governor. WASH. CONST. art. IV, §§ 5 (superior court), 30 (Court of Appeals); RCW 2.06.080 (Court of Appeals); WASH. CONST. art. IV, § 3 (Supreme Court). Thus, the manner in which municipal court judges are appointed to their position indicates that they are not "state officers" for purposes of article IV, section 4.

2.     Salary

Judge Ladenburg further contends that municipal court judges are "state officers" because their salaries are paid in part by the State, specifically from court fees collected by the State. However, this indirect relationship between state

---

[3] Jurisdictions that are governed by former chapter 3.46 RCW, rather than chapter 3.50 RCW, may elect or appoint municipal judges in a manner determined by its legislative body. *See* former RCW 3.46.050 (1985), former RCW 3.46.060, .100 (1984).

10

*Ladenburg v. Henke*, No. 98319-4

action and municipal court judges' salaries is not sufficient to make municipal court judges into state officers for purposes of article IV, section 4.

A useful point of comparison can be found in the provisions governing the salaries of other judges. The constitution mandates that the salary of Supreme Court judges (in full) and superior court judges (in part) come *directly* from the State: "The salaries of the judges of the supreme court shall be paid by the state. One-half of the salary of each of the superior court judges shall be paid by the state, and the other one-half by the county or counties for which [they are] elected." WASH. CONST. art. IV, § 13. The constitution elaborates that where a superior court judge serves more than one county, that portion of the salary to be paid by the counties "shall be apportioned between or among them according to the assessed value of their taxable property." *Id*.

Tellingly, this division between the state's and the county's responsibilities for superior court judges' salaries reflect the judges' split jurisdictional obligations. As we said in *Edelstein*, "[A] superior court judge occupies a dual position; that is, [they are] a state officer and also a county officer." 6 Wn.2d at 448. This constitutional framework suggests that superior court judges are state officers, not just because they are partially paid *by* the State, but because their state-apportioned salary is tethered to their jurisdictional obligations *to* the state.

11

*Ladenburg v. Henke*, No. 98319-4

Unlike superior court judges, the state constitution does not assign the salaries of municipal court judges.[4] The legislature has determined that the salaries of these judges "shall be paid wholly out of the funds of the city or town." RCW 3.50.080; former RCW 3.46.090 (1984).[5] In 2005, the legislature permitted money from the state general fund—specifically, money collected from some court fees— to "contribut[e] to . . . eligible elected municipal court judges' salaries." RCW 43.08.250(2); LAWS of 2005, ch. 457, § 8(2)(a)(iv). These state-collected dollars are unfixed and set by a distribution formula developed by the administrator for the courts. RCW 2.56.030(22)(a).

Nevertheless, the fact that municipal judges might *indirectly* receive a portion of their salary from court fees collected by the State does not transform municipal judges into state officers for purposes of article IV, section 4. These state dollars are entirely unrelated to the jurisdictional obligations of municipal judges. In fact, the same statutory provision that allows state dollars to contribute to municipal judge salaries also allocates state dollars to fund attorneys for

---

[4] Judge Ladenburg claims that Judge Henke's salary is determined by the "State Salary Commission" and that this is evidence that she is a state officer. Br. of Pet'r at 14; Answer of Pet'r to Amicus Br. at 10. Pursuant to article XXVIII, the Washington Citizens' Commission on Salaries for Elected Officials (WCCSEO) sets the salaries for Supreme, Appeals, superior, and district court judges. This provision does not mention municipal judges. *See also* https://salaries.wa.gov/salary/judicial-branch ("[WCCSEO] do[es] not set the salaries of municipal judges."); RCW 43.03.012 (does not establish the salary of municipal court judges). The salary of Pierce County District Court judges, not Tacoma Municipal Court judges, is set by the WCCSEO. https://salaries.wa.gov/salary/salary-history-state%E2%80%99s-elected-officials-1962-2022.

[5] As explained in footnote 6 below, Tacoma Municipal Court operates pursuant to former chapter 3.46 RCW.

12

*Ladenburg v. Henke*, No. 98319-4

criminal defense, parents in dependency and termination proceedings, and civil

legal representation for indigent persons. RCW 43.08.250(2). Whereas the

constitution requires that superior court judges be "paid by the state" because they

have jurisdictional obligations to the state, the legislature has simply allowed state

dollars to "contribute" to the salaries of municipal judges because of a general,

legislative investment in the courts.

  3.  Impeachment

Next, Judge Ladenburg contends that municipal court judges are state

officers because they may be removed "by a supermajority vote of the Legislature,

or through impeachment." Br. of Pet'r at 16. He is incorrect. The constitutional

impeachment and removal provisions cited by Judge Ladenburg do not apply to

municipal court judges.

Article IV states, "*Any judge of any court of record . . .* may be removed

from office by joint resolution of the legislature, in which three-fourths of the

members elected to each house shall concur." WASH. CONST. art. IV, § 9

(emphasis added). Article V states that "[t]he governor and other state and judicial

officers, *except judges and justices of courts not of record*, shall be liable to

impeachment." WASH. CONST. art. V, § 2 (emphasis added). Neither of these

provisions apply to municipal court judges because municipal courts are not

*Ladenburg v. Henke*, No. 98319-4

"courts of record."[6]

The constitution established the Supreme Court and superior court as "courts of record" and described the power of the legislature to determine other courts of record. WASH. CONST. art. IV, § 11. In 1891, the legislature created municipal courts and expressly designated them as "courts of record." LAWS of 1891, ch. 64. However, in 1897, the legislature repealed chapter 64, abolishing municipal courts altogether. LAWS of 1897, ch. 113. When the legislature reauthorized municipal courts in 1955, it did not designate them as "courts of record." LAWS of 1955, ch. 290. Thereafter, the legislature defined municipal courts as "inferior courts," LAWS of 1961, ch. 299, and, later, "courts of limited jurisdiction." LAWS of 1980, ch. 162. Today, municipal courts remain classified as "courts of limited jurisdiction" under Title 3 RCW, separate and distinct from superior and appellate courts classified under Title 2 RCW as "courts of record." Our court has repeatedly upheld the legislature's designation, concluding that municipal courts are not "courts of record." *See State ex rel. Carroll v. Simmons*, 61 Wn.2d 146, 152, 377 P.2d 421 (1962); *City of Seattle v. Filson*, 98 Wn.2d 66, 71, 653 P.2d 608

---

[6] "Courts of record" does not refer to any court that records its proceedings. ARLJ 13(a) requires all courts of limited jurisdiction, like municipal courts, to make and retain electronic records of all proceedings. However, court rules requiring record keeping do not automatically transform courts of limited jurisdiction into "courts of record." *City of Seattle v. Filson*, 98 Wn.2d 66, 70, 653 P.2d 608 (1982), *overruled on other grounds by In re Application of Eng*, 113 Wn.2d 178, 776 P.2d 1336 (1989).

(1982), *overruled on other grounds by In re Application of Eng*, 113 Wn.2d 178, 189, 776 P.3d 1336 (1989).

Ladenburg also cites *In re Disciplinary Proceeding Against Turco*, 137 Wn.2d 227, 970 P.2d 731 (1999), to argue that Tacoma Municipal Court judges may be removed by a supermajority vote of the legislature. *Turco* does not stand for this position. Instead, it states that article IV, section 9 permits removal of judges by the legislature, but it notes that this applies only to judges from "courts of record." *Id*. at 238 & n. 2.

Rather than being subject to removal through impeachment, municipal judges can be removed by joint action of the Commission on Judicial Conduct and this court, as described by article IV, section 31 of the Washington Constitution. This is not analogous to the constitutional impeachment procedures applicable to "state officers."

4.      Jurisdiction

Finally, we may refer to public officials' jurisdictional reach to determine whether they are "state officers." This factor clearly weighs against holding that municipal court judges are state officers. Whereas the constitution established the wide, general jurisdiction of the superior court in article IV, section 6, the framers delegated to the legislature the determination of the scope of jurisdiction for inferior courts. WASH. CONST. art. IV, §§ 10, 12. As designed by the legislature,

*Ladenburg v. Henke*, No. 98319-4

municipal courts are courts of limited jurisdiction and may hear only certain cases, as determined by statute. *City of Medina v. Primm*, 160 Wn.2d 268, 273, 157 P.3d 379 (2007).

Judge Ladenburg nevertheless contends that Tacoma Municipal Court judges are "members of the Pierce County District Court," Br. of Pet'r at 17, and such judges "have responsibilities that are statewide in scope" and may, in certain circumstances, hear cases outside city limits in accordance with court-sharing agreements. Petr's Answer to Amicus Br. at 11-12.

It is true that Tacoma Municipal Court is organized not as a "municipal court" pursuant to chapter 3.50 RCW but, rather, as a "municipal department" of the Pierce County District Court operating in accordance with former chapter 3.46 RCW.[7] Regardless of Tacoma Municipal Court's organizational structure, however, Judge Henke is still a municipal court judge whose duties remain jurisdictionally limited.

Municipal courts have exclusive original jurisdiction over traffic infractions, criminal violations of city ordinances, and other matters designated by statute. RCW 3.50.020. Municipal departments operating pursuant to former chapter 3.46 RCW—like Tacoma Municipal Court—have similar limitations: "[a] municipal

---

[7] In 2008, the legislature repealed chapter 3.46 RCW (rules governing municipal departments) but permitted preexisting municipalities to continue operating in accordance with that chapter. Tacoma Municipal Court operates pursuant to former chapter 3.46 RCW. PIERCE COUNTY CODE 2.54.020; TACOMA ORDINANCE 28362 (2016).

department shall have exclusive jurisdiction of matters arising from ordinances of the city, and no jurisdiction of other matters except as conferred by statute." Former RCW 3.46.030 (1985). The majority of cases filed in Washington's municipal courts are related to traffic and parking matters. *Caseloads of the Courts of Washington*, 2019 Annual Report, http://www.courts.wa.gov/caseload/content/archive/clj/Annual/2019.pdf. Tacoma Municipal Court is no different. *Id*. (Of the 12,233 cases filed in Tacoma Municipal Court in 2019, more than three-fourths (9,409 cases) were related to traffic and parking related infractions and misdemeanors.). Though municipal court judges will undoubtedly review matters of state law, the "character and extent of their jurisdiction" is better defined as a county officer overseeing local ordinances rather than a state officer exercising the power of the State.

Thus, every one of the factors in our analysis indicates that Judge Henke, in her capacity as a municipal court judge, is not a "state officer" over whom this court may exercise original jurisdiction pursuant to article IV, section 4.[8] This court will dismiss a petition for a writ where it lacks original jurisdiction. *Hollenbeck*, 43 Wn.2d at 638. We therefore dismiss Judge Ladenburg's petition,

---

[8] In the alternative, Judge Ladenburg argues that this court has previously exercised original jurisdiction to issue writs against judges who are not state officers, citing *Seattle v. Rohrer*, 69 Wn.2d 852, 420 P.2d 687 (1966), and *O'Connor v. Matzdorff*, 76 Wn.2d 589, 458 P.2d 154 (1969). As neither *Rohrer* nor *O'Connor* directly addresses whether a municipal court judge is a state officer for purposes of article IV, section 4, we decline to apply those cases here.

17

*Ladenburg v. Henke*, No. 98319-4

and we need not address the parties' contentions regarding the scope of authority conferred to presiding judges by GR 29.

CONCLUSION

We conclude that municipal court judges are not state officers for purposes of article IV, section 4 of the Washington Constitution. Therefore, this court does not have original jurisdiction to grant a constitutional or statutory writ against Judge Henke, and we dismiss Judge Ladenburg's petition without further review.

_____
Yu, J.

WE CONCUR:

_____
González, C.J.

_____
Gordon McCloud, J.

_____
Johnson, J.

_____
Montoya-Lewis, J.

_____
Owens, J.

_____
Whitener, J.

_____
Stephens, J.

_____
Sutton, J.P.T.

18